The Honorable Karen A. Overstreet
Chapter 11

\*\*HEARING DATE: THURSDAY, OCTOBER 24, 2013
\*\*HEARING TIME: 9:30 A.M.
LOCATION: SEATTLE, COURTROOM 7206
RESPONSES DUE: AT TIME OF HEARING
**\*\*SUBJECT TO ENTRY OF ORDER SHORTENING TIME FOR HEARING**

Arnold M. Willig
Elizabeth H. Shea
Charles L. Butler, III
HACKER & WILLIG, INC., P.S.
520 Pike Street, Suite 2500
Seattle, Washington 98101
Telephone (206) 340-1935

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

In re:

NATURAL MOLECULAR TESTING CORPORATION,

Debtor.

No. 13-19298-KAO

DECLARATION OF KEITH TYACKE IN SUPPORT OF EMERGENCY MOTIONS:

EMERGENCY MOTION RE: PREPETITION WAGES

EMERGENCY MOTION RE: CASH MANAGEMENT, CONTINUED USE OF PREPETITION BANK ACCOUNTS AND CHECKS

I, Keith Tyacke, declare as follows:

1. I am the Chief Financial Officer of Natural Molecular Testing Corporation (the "Debtor"), debtor-in-possession herein. I have personal knowledge of the facts set forth herein and I am competent to testify to the same.

2. The Debtor is a Washington corporation based in Renton, Washington. Founded

DECLARATION OF KEITH TYACKE - 1

HACKER & WILLIG, INC., P.S.
ATTORNEYS AT LAW
520 Pike Street, Suite 2500
Seattle, Washington 98101
Telephone (206) 340-1935

Case 13-19298-KAO    Doc 7    Filed 10/22/13    Ent. 10/22/13 16:49:13    Pg. 1 of 4

in 2008, the Debtor is an industry leader in molecular diagnostic testing for pharmacogenomics, women's health, oncology, infectious disease, and more.

3. The Debtor generates revenue through the sale and conduct of the testing it offers to health care providers, including High-Complexity Molecular Clinical Diagnostic Testing. The Debtor was founded in Seattle, Washington, as a leading center for biomedical technology and research, with a vision of speeding the advancement of "personalized medicine."

4. The Debtor presently maintains offices and a lab in Renton, Washington, and employs approximately 26 employees.

5. The Debtor was founded in 2008 to provide genetic testing services to health care providers, beginning with a single owner/employee. The Debtor's business operations and profits grew rapidly from 2010 through 2012. In January of 2013, Medicare implemented a new reimbursement/pricing structure and reimbursement timeline for molecular genetics testing. This change temporarily eliminated an important source of revenue for the Debtor. Subsequently, in April of 2013, Medicare informed the Debtor that its approved payments dating back to 2012 were being suspended due to allegations of improper billing practices, which the Debtor rebutted and continues to dispute. Revenues decreased drastically thereafter, and the Debtor continued to pay certain commissions to its sales representatives and other expenses it incurred to perform its genomic testing. As a result the Debtor was forced to lay off staff. Debtor's test volume is a fraction of what it once was. This bankruptcy filing ensued shortly thereafter.

6. Prior the commencement of this Chapter 11 case, the Debtor maintained several bank accounts with various depository institutions. A list of the bank accounts and the purpose of each is attached hereto as **Exhibit A**.

7. The Debtor maintains two active accounts, one at HomeStreet Bank, and the other at U.S. Bank. During the period of increased revenues, the Debtor maintained several more depository accounts in order to more evenly distribute the Debtor's cash and assets to achieve maximum protection by the Federal Deposit Insurance Corporation.

DECLARATION OF KEITH TYACKE - 2

HACKER & WILLIG, INC., P.S.
ATTORNEYS AT LAW
520 Pike Street, Suite 2500
Seattle, Washington 98101
Telephone (206) 340-1935

Case 13-19298-KAO    Doc 7    Filed 10/22/13    Ent. 10/22/13 16:49:13    Pg. 2 of 4

8. The Debtor maintains a disbursement account for accounts payable, payroll, and payroll taxes at HomeStreet Bank (the "Disbursement Accounts"), which Disbursement Account maintains minimum daily balances as needed.

9. The parties with which the Debtor transacts business will be aware of its status as a debtor-in-possession. It would be needlessly burdensome, as well as disruptive to business operations, for the Debtor to change its bank accounts and checks.

10. The Debtor therefore respectfully requests that it be authorized to use its prepetition checks and checking accounts without placing the label "debtor-in-possession" on each check.

11. As stated above, the Debtor currently employs 26 individuals. The Debtor's most recent completed payroll periods runs from 10/10/13 through 10/23/13 and is scheduled to be paid on 10/25/13. In addition, certain payroll taxes associated with the prepetition portion of the payroll period must be paid.

12. The Debtor estimates that amounts owed on 10/25/13 in connection with the payroll for the period ending 10/23/13 and related taxes are approximately $123,435.76.

13. The Debtor maintains employer-sponsored medical/vision, dental, and life/ADD insurance plans for its employees, with annual and monthly costs as indicated:

| Type | Company | Monthly Cost (Employee portion only) | Annual Cost |
|---|---|---|---|
| Medical/Vision (non-Union) | $10,446.29 | $3,446.91 | $166,718.28 |
| Dental (non-Union) | $1,338.97 | $437.06 | $21,912.36 |
| Life/ADD (non-Union) | $84.70 | $54.45 | $1669.80 |
| **Totals:** | $11,869.96 | $3,938.42 | $190,300.44 |

14. The Debtor's business operation also includes providing its employees other benefits such as vacation pay and a reimbursement of business expenses including credit card charges for company-authorized expenses. The Debtor desires to continue to provide, in the exercise of its discretion and business judgment, employee benefits including the referenced

DECLARATION OF KEITH TYACKE - 3

HACKER & WILLIG, INC., P.S.
ATTORNEYS AT LAW
520 Pike Street, Suite 2500
Seattle, Washington 98101
Telephone (206) 340-1935

Case 13-19298-KAO   Doc 7   Filed 10/22/13   Ent. 10/22/13 16:49:13   Pg. 3 of 4

insurance coverage and the payment of accrued and unpaid benefits on an uninterrupted basis.

15. A loss of the ability to pay its ordinary payroll and benefits would have an adverse effect on the Debtor's ability to maintain its ongoing operations and successfully maximize its assets for the benefit of the creditors.

16. Allowing the Debtor to honor prepetition claims for wages and employee benefits, including honoring payroll, will assist the Debtor in maintaining normal day-to-day operations. By preventing employees from suffering loss of income and benefits, employees are more likely to remain with the Debtor through its restructuring, to the benefit of the estate and its creditors. The Debtor will not pay any single employee in excess of $11,725 in prepetition earnings as allowed by 11 U.S.C. § 507(a)(4) pursuant to the accompanying motions.

17. I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 22nd day of October, 2013, at Renton, Washington.

_____
Keith Tyacke
NATURAL MOLECULAR TESTING CORPORATION

DECLARATION OF KEITH TYACKE - 4

HACKER & WILLIG, INC., P.S.
ATTORNEYS AT LAW
520 Pike Street, Suite 2500
Seattle, Washington 98101
Telephone (206) 340-1935