**ASSET PURCHASE AGREEMENT**

**by and among**

**Mark Calvert, in his capacity as Chapter 11 Trustee for
NATURAL MOLECULAR TESTING CORPORATION**

**and**

**YOURCODE, INC.**

**Dated as of January 20, 2015**

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT, dated as of January 20, 2015 (the "**Agreement**"), is made by and among Mark Calvert, in his capacity as Chapter 11 Trustee (the "**Trustee**") for Natural Molecular Testing Corporation, a Washington corporation ("**Seller**"), and YOURCODE, Inc., a Washington corporation ("**Purchaser**"). Purchaser's shareholders Beau Fessenden, Keith Tyacke and Ken Webert (the "**Purchaser Shareholders**") are also parties hereto with respect to their individual obligations hereunder. Capitalized terms used herein and not otherwise defined shall have the meanings set forth in Article 9 of this Agreement.

WHEREAS, on October 21, 2013 (the "**Petition Date**"), Seller sought relief under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") by filing a case, entitled In re Natural Molecular Testing Company, Case No. 13-19298 (the "**Chapter 11 Case**") in the United States Bankruptcy Court for the Western District of Washington (the "**Bankruptcy Court**");

WHEREAS, by order of the Bankruptcy Court dated September 29, 2014, the Trustee was appointed as Chapter 11 trustee for Seller;

WHEREAS, Seller intends to sell certain assets and properties pursuant to, inter alia, Sections 105, 363 and 365 of the Bankruptcy Code;

WHEREAS, Purchaser desires to purchase certain assets and properties of Seller and Seller desires to sell, convey, assign and transfer to Purchaser pursuant to, inter alia, Sections 105, 363 and 365 of the Bankruptcy Code, those certain assets and properties all in the manner and subject to the terms and conditions set forth herein; and

NOW, THEREFORE, in consideration of the foregoing and the respective representations, warranties, covenants and agreements set forth herein, the parties hereto agree as follows:

## ARTICLE 1. PURCHASE AND SALE OF ASSETS

SECTION 1.01     *Acquired Assets*

Subject to the terms and conditions set forth in this Agreement and subject to the approval of the Bankruptcy Court, and pursuant to the Sale Order, at the Closing, Seller shall transfer, assign, convey and deliver to Purchaser or its designee, pursuant to Section 363 of the Bankruptcy Code, all of the Acquired Assets, free and clear of liens as provided in the Sale Order.

(a)     *Assigned Assets*. On the terms and subject to the conditions precedent set forth in this Agreement, Seller shall sell, assign, transfer, convey, and deliver (or cause to be sold, assigned, transferred, conveyed and delivered) to Purchaser, and Purchaser shall purchase and accept from Seller, at the Closing all of Seller's rights, title, and interests in, to and under all of the assets, property, rights and claims of Seller relating to:

All software and other intellectual property assets used in the YOURCODE business, and any personal property related thereto, including but not limited to: Customer lists for physicians and clinics; patents and copyrights; programs known as LabSynq, CGAT, MedRepo, GDIQ, to include all passwords and all patient data and DNA samples, subject to the condition precedent that Purchaser is able to verify that it can transfer and use that patient data; computing equipment specified on Exhibit A, and 2012 GMC Sierra Denali, including all assets set forth on Exhibit A (the "**Assigned Assets**"), but excluding (i) any real property, (ii) any physical assets except as specifically set forth herein, (iii) any cash, cash equivalents, or bank accounts, (iv) any accounts receivable, (v) any causes of action, known or unknown, and (vi) the assets, property, rights and claims specifically set forth on Exhibit B (together, the "**Excluded Assets**").

(b)      *Acquired Intellectual Property.*  Purchaser shall acquire all Intellectual Property used by Seller in the YOURCODE business, subject to the conditions and terms set forth in this Agreement, including a fully-paid, royalty-free license back to the Trustee for the purposes of administering Seller's remaining assets and otherwise fulfilling the Trustee's and Seller's legal obligations in the Bankruptcy Case (the "**Acquired Intellectual Property**").

(c)      *Excluded Assets.*  Notwithstanding the foregoing, Purchaser expressly understands and agrees that (a) the assets and properties of Seller listed on Exhibit B under the heading "Excluded Assets" (as amended from time to time by Purchaser prior to Closing) shall be excluded from the Acquired Assets.

SECTION 1.02      *Assumed Liabilities.*  On the terms and subject to the conditions set forth in this Agreement, at the Closing, Purchaser shall assume from Seller and thereafter pay, perform or discharge when due (or cause to be paid, performed or discharged when due) in accordance with their terms all of Seller's liabilities and obligations arising or otherwise relating to any period on or after the Closing Date the liabilities expressly set forth on Exhibit C.  The liabilities to be assumed pursuant to this Section 1.02 shall be referred to herein as the "**Assumed Liabilities**."

SECTION 1.03      *Excluded Liabilities.*   Notwithstanding any other provision of this Agreement to the contrary, Purchaser is assuming only the Assumed Liabilities and is not assuming any other liability or obligation of Seller of any nature, whether presently in existence or arising hereafter, known or unknown, disputed or undisputed, contingent or noncontingent, liquidated or unliquidated or otherwise, including severance, termination pay, accrued vacation, pension, profit sharing or any other employee benefit plans, compensation or retiree medical or other benefits and obligations, or any obligation, claim or amount for employees, or any obligation, claim or amount under the Workers Adjustment and Retraining Notification Act ("WARN Act") or COBRA, product-related liabilities of Seller or liabilities arising under environmental laws.  All such other liabilities and obligations shall be retained by and remain obligations and liabilities of Seller (all such liabilities and obligations not being assumed being herein referred to as the "**Excluded Liabilities**").

SECTION 1.04      *Purchase Price.*  The consideration for the Acquired Assets shall consist of the following (together, the "**Purchase Price**"):

(a)     Cash of $10,000, plus the Trustee's actual costs of providing copies of data on servers as requested by Purchaser, payable at Closing;

(b)     A Promissory Note for $240,000, payable in 24 monthly payments of $10,000 per month, first payment to begin June1, 2015, with no interest and no prepayment penalty (the "**Promissory Note**"); to be secured by a security interest in favor of Seller in the Purchased Assets pursuant to a Security Agreement (the "**Security Agreement**");

(c)     Waiver of any administrative claims in the Bankruptcy Case currently held or that may be asserted by each of Beau Fessenden, Keith Tyacke, and Ken Webert, including without limitation any administrative claims on account of past or future labor and/or cash contributions, including future contributions to the Trustee of up to 15 hours of weekly assistance, as reasonably requested; and

(d)     Assumption or payment by Purchaser of the Assumed Liabilities.

Purchaser shall pay the cash portion of the Purchase Price at Closing by wire transfer pursuant to the instructions set forth in Schedule 1.04.

SECTION 1.05     *Transfer Taxes.*  Purchaser will be responsible for and timely pay (without adjustment to the Purchase Price) any sales, use or transfer Taxes, documentary charges, recording fees, or similar Taxes, charges or fees arising from or in connection with the sale, assignment and transfer of the Acquired Assets to Purchaser pursuant to this Agreement.

SECTION 1.06     *Allocation.* On or prior to the Closing, Purchaser and Seller shall prepare an allocation of the Purchase Price and Assumed Liabilities among the Acquired Assets in accordance with Section 1060 of the Internal Revenue Code, as amended, and the Treasury Regulations thereunder (and any similar state or local law, as appropriate), and attach such allocation to this Agreement as Schedule 1.06.  Purchaser and Seller will file IRS Form 8594 and all tax returns in a manner that is consistent with the allocation of the Purchase Price and the Assumed Liabilities among the Acquired Assets, as set forth on the agreed Schedule 1.06.


# ARTICLE 2.  THE CLOSING

SECTION 2.01     *Closing.*  The consummation of the transactions contemplated by this Agreement (the "**Closing**") shall take place at the offices of Perkins Coie LLP, 1201 Third Avenue, Suite 4800, Seattle, Washington, 98101-3099, at 10:00 a.m. (Seattle time) (a) no later than the fifteenth day after the Sale Order becomes a Final Order (unless the requirement of a Final Order is waived by Purchaser) and all of the conditions set forth in Article 6 shall have been satisfied or waived (other than conditions with respect to actions the parties will take at the Closing itself), or (b) at such other time, date and place as shall be fixed by agreement among the parties (the date of the Closing being herein referred to as the "**Closing Date**").

SECTION 2.02    *Deliveries at Closing.*

(a)    At the Closing, Seller shall deliver to Purchaser:

(i)    a duly executed bill of sale, assignment and assumption with respect to the Acquired Assets and the Assumed Liabilities (the "**Bill of Sale**"), substantially in the form attached hereto as Exhibit D, transferring the Acquired Assets to Purchaser free and clear of any and all liens;

(ii)    such further deeds, bills of sale, assignments of leases and contracts, and any other instruments of conveyance (collectively, the "**Conveyance Documents**") as are reasonably deemed necessary or appropriate by Purchaser to effectuate the assignment of the Acquired Assets by Seller and effectively vest in Purchaser good, valid and marketable title to the Acquired Assets; and

(iii)    other customary (for transactions of this kind) closing documents, instruments or certificates required to be delivered as a condition precedent to Purchaser's obligations under this Agreement.

(b)    At the Closing, Purchaser shall deliver to Seller:

(i)    duly executed instruments as are reasonably deemed necessary or appropriate by Seller to effectuate the assumption of the Assumed Liabilities by Purchaser; and

(ii)    other customary closing documents, instruments or certificates required to be delivered as a condition precedent to Seller's obligations under this Agreement.

(c)    At the Closing, Purchaser shall deliver the cash portion of the Purchase Price, the Promissory Note, and the Security Agreement.

SECTION 2.03    *Further Assurances.*  After the Closing each party will from time to time, at the reasonable request of the other party, execute and deliver such other instruments of conveyance and transfer and such other instruments, documents and agreements and take such other actions as such other party may reasonably request, in order to more effectively consummate the transactions contemplated hereby and to vest in Purchaser the right, title and interest in, to and under the Acquired Assets and to provide for the assumption of the Assumed Liabilities.

SECTION 2.04    *Compliance with Applicable Law.*  Except for the obligations of Seller specifically incurred herein, it shall be Purchaser's sole responsibility to ensure that the transactions contemplated by this Agreement comply with all applicable law, and Seller makes no representations or warranties regarding such compliance.

# ARTICLE 3.  REPRESENTATIONS AND WARRANTIES OF SELLER

As of the date hereof, Seller hereby represents and warrants to Purchaser as follows:

SECTION 3.01      *Organization.*  Seller is a corporation duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation.  Seller has no subsidiaries.

SECTION 3.02      *Authority.*  Subject to the approval of the Bankruptcy Court, the Trustee on behalf of Seller has full corporate capacity, power and authority to enter into this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby in accordance with the terms of this Agreement.  This Agreement has been duly executed and delivered by Seller.  Assuming due authorization, execution and delivery by Purchaser, this Agreement will constitute a valid and binding obligation of Seller upon the entry of the Sale Order by the Bankruptcy Court.

SECTION 3.03      *Sale Free and Clear*

Except as otherwise disclosed herein, upon entry of the Sale Order, none of the Acquired Assets will be subject to any liens, other than the Assumed Liabilities.

SECTION 3.04      *Intellectual Property.*

(a)     Schedule 3.04(a) sets forth, to the best of the Trustee's Knowledge, the Intellectual Property used by Seller in connection with the Business a complete and accurate list of all license agreements (whether as licensor or licensee), including but not limited to, all agreements relating to technology, know-how or processes included in the Acquired Assets (the "**IP License Agreements**").

(b)     To the best of Seller's knowledge, except as set forth in Schedule 3.04(b):

(i)     Seller owns or has the valid right to use the Acquired Intellectual Property;

(ii)     all Acquired Intellectual Property owned or used by Seller is valid and subsisting in full force and effect and has not been cancelled, expired or abandoned;

(iii)     no claims have been asserted against Seller by any Person challenging the ownership or right to use any of the Acquired Intellectual Property or challenging or questioning the validity or effectiveness of any such IP License Agreement; and

(iv)     the use by Seller of the Acquired Intellectual Property does not infringe the rights of any third party.

(c)     Except as set forth on Schedule 3.04(d) and for any fees required by the U.S. Trademark and Patent Office, there shall be no additional fees, costs or assessments required to assign or sell the Acquired Intellectual Property to Purchaser.

(d)     Except as set forth on Schedule 3.04(e), Seller is not aware of any defenses which a party may have to the assignment or sale of the Acquired Intellectual Property to Purchaser.

SECTION 3.05       *Brokers*.   No Person is entitled to any brokerage, financial advisory, finder's or similar fee or commission payable in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Seller.

## ARTICLE 4.  REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller as follows:

SECTION 4.01       *Organization*.   Purchaser is a corporation that is validly existing and in good standing under the laws of its jurisdiction of organization and has the corporate power and authority to execute and deliver this Agreement and to complete the transactions contemplated by this Agreement.

SECTION 4.02       *Authority*.   Purchaser has with the power and authority to enter into this Agreement and to carry out its obligations hereunder.  The execution, delivery, and performance of this Agreement by Purchaser and the consummation by Purchaser of the transactions contemplated hereby will have been duly authorized by all requisite corporate action. This Agreement has been duly and validly executed and delivered by Purchaser and (assuming this Agreement constitutes a valid and binding obligation of Seller) constitutes a valid and binding agreement of Purchaser, enforceable against Purchaser in accordance with its terms.

SECTION 4.03       *Consents and Approvals*.   Except approvals or authorizations which may be required under the Bankruptcy Code, no consent, approval, certificate, license, permit, waiver, authorization of, or declaration, filing or registration with, any third party or any Governmental Entity is required to be obtained or made by Purchaser in connection with the execution, delivery and performance by Purchaser of this Agreement or the consummation by Purchaser of the transactions contemplated hereby.

SECTION 4.04       *No Violation*.   Neither the execution or delivery of this Agreement nor the consummation of the transactions contemplated hereby will, upon entry of the Sale Order: (a) violate any provision of the articles of incorporation or by-laws of Purchaser; or (b) violate any statute, law, judgment, decree, order, regulation or rule of any court or governmental authority applicable to Purchaser; or (c) violate, or be in conflict with, or constitute a default (or an event which, with notice or lapse of time or both, would constitute a default) under, or result in the termination of, or accelerate the performance required by, or cause the acceleration of the maturity of any debt or obligation pursuant to, any agreement or commitment to which Purchaser is a party or by which Purchaser is bound.

SECTION 4.05       *Brokers*.   No Person is entitled to any brokerage, financial advisory, finder's or similar fee or commission payable in connection with the transactions contemplated by this Agreement based upon arrangements made by or on behalf of Purchaser.

## ARTICLE 5.  COVENANTS

SECTION 5.01       *Confidentiality*.

(a)       Seller covenants that, after the Closing, it will not, without the prior written consent of Purchaser, disclose to any Person confidential information relating to or concerning

the Acquired Assets or the Business (the "**Confidential Information**"), except its respective officers, directors, employees, advisors and representatives who need to know such information for purposes of taxes, accounting, legal and other matters necessary by reason of Seller's ownership, prior to the Closing Date, of the Acquired Assets.

(b)     The restrictions and prohibitions set forth in subsection (a) above will not apply to Confidential Information that (i) is known by the receiving party at the time of its receipt, other than through a disclosure by Seller not otherwise permitted under this Section 5.01, (ii) at the time of disclosure is already available in the public domain other than as a result of a breach of this Section 5.01, (iii) is disclosed by Seller in order to perform its obligations or enforce its rights under this Agreement (provided that such disclosure entails only the minimum information required to be disclosed in order to perform their obligations or enforce their rights under this Agreement), or (iv) is required to be disclosed by applicable law or judicial order (provided that such disclosure entails only the minimum information required to be disclosed in order to comply with the law or order).

(c)     This Section 5.01 will survive for a period of one year after the Closing.

SECTION 5.02     *Additional Matters*.  Subject to the terms and conditions herein, except as provided by the Bankruptcy Code, the Bankruptcy Rules or any other orders entered or approvals or authorizations granted by the Bankruptcy Court in the Chapter 11 Case, including any order contemplated by Section 6.01(a) hereof, each of the parties hereto agrees to use all commercially reasonable efforts to take, or cause to be taken, all action and to do, or cause to be done, all things necessary, proper or advisable, including under applicable laws and regulations, to consummate and make effective the transactions contemplated by this Agreement, including using all commercially reasonable efforts to obtain all necessary waivers, consents and approvals required under this Agreement.

SECTION 5.03     *Consents; Assignments*.  Neither Seller nor Purchaser are aware of any licenses or other contracts that require consent to be assigned to Purchaser with respect to the Acquired Assets, and the Purchaser assumes all risk and expense with respect to any such required consents that are not obtained.

SECTION 5.04     *Disclosure Supplements*.  Seller will deliver, and from time to time prior to the Closing Seller shall promptly supplement or amend, the Schedules referred to in Article 3 (the "**Disclosure Schedules**") with respect to any matter arising after the date hereof which, if existing or occurring at or prior to the date hereof, would have been required to be set forth or described in the Disclosure Schedules or which is necessary to complete or correct any information in the Disclosure Schedules or in any representation or warranty of Seller which has been rendered inaccurate thereby.  Each supplement to the Disclosure Schedules provided to Purchaser after execution of this Agreement, shall be clearly labeled as "**Updated Disclosure**". Within five (5) Business Days of receipt of an Updated Disclosure, Purchaser may, in its sole discretion, either (i) accept the Updated Disclosure, in which case, the event, fact or circumstance so disclosed, shall be deemed to be added to the Disclosure Schedules and shall not be deemed a breach of the representations and warranties of Seller; or (ii) elect to terminate this Agreement.  If Purchaser does not notify Seller of its election to terminate this Agreement within five (5) Business Days of receipt of an Updated Disclosure, it shall be deemed to be added to the

Disclosure Schedule and shall not be deemed a breach of the representations and warranties of Seller.

SECTION 5.05     *Cooperation by Purchaser Shareholders*.  Each of Beau Fessenden, Keith Tyacke, and Ken Webert, hereby agrees to provide assistance to the Trustee of not more than 15 hours per week as reasonably requested by the Trustee in the course of fulfilling his duties in the Bankruptcy Case.

# ARTICLE 6. CONDITIONS PRECEDENT

SECTION 6.01     *Conditions Precedent to Obligation of Seller and Purchaser*.  The respective obligations of each party to effect the transactions contemplated by this Agreement shall be subject to the satisfaction of the following conditions:

(a)     all other authorizations, consents, orders and approvals of Governmental Entities and the Bankruptcy Court necessary for the consummation of the transactions contemplated by this Agreement shall have been obtained, including an order from the Bankruptcy Court (the **"Sale Order"**) in a form reasonably satisfactory to Purchaser and which shall, among other things, (i) contain findings of fact and rulings that Purchaser (A) is a good faith purchaser, (B) is not a successor to the liabilities of Seller, other than the Assumed Liabilities, and (C) is entitled to all applicable protections of the Bankruptcy Code; and (ii) terminate and release all of the liens, claims and interests in and to the Acquired Assets except to the extent securing any of the Assumed Liabilities (it being understood that such order or an abstract thereof shall be in form suitable for filing in applicable lien records and shall direct the execution of appropriate title transfers and lien releases by creditors with respect to the transferred or released property and limitations on the Assumed Liabilities as set forth in this Agreement and enjoin any holder of a claim or interest in Seller from asserting any such claim or interest against Purchaser, other than claims directly related to the Assumed Liabilities);

(b)     there shall not be any statute, rule or regulation, enjoining or prohibiting the consummation of the Closing and no court of competent jurisdiction shall have issued, and there shall not have been commenced and be continuing any action by any Governmental Entity seeking, any order, decree or ruling enjoining or prohibiting the consummation of the Closing; and

(c)     the Sale Order shall be a Final Order.

SECTION 6.02     *Conditions Precedent to Obligation of Seller*.  The obligation of Seller to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following additional conditions:

(a)     Purchaser shall have performed in all material respects its obligations under this Agreement required to be performed by Purchaser at or prior to the Closing Date; and

(b)     the representations and warranties of Purchaser contained in this Agreement shall be true and correct in all respects (in the case of any representation or warranty qualified as to

materiality) or all material respects (in the case of any representation or warranty not so qualified) as of the Closing Date as if made at and as of such date except as otherwise contemplated by this Agreement.

SECTION 6.03        *Conditions Precedent to Obligation of Purchaser.*   The obligation of Purchaser to effect the transactions contemplated by this Agreement shall be subject to the satisfaction or waiver at or prior to the Closing Date of the following additional conditions:

(a)        The sale and purchase of the Acquired Assets shall have been approved by the Bankruptcy Court.

(b)        The Sale Order shall, among other things—

(i)        waive the Bankruptcy Rule 6004(h) waiting period;

(ii)        be a Final Order; or, if appealed, and

(iii)        not be subject to any stay.

(c)        The representations and warranties of Seller contained in this Agreement shall be true and correct in all respects (in the case of any representation or warranty qualified as to materiality) or all material respects (in the case of any representation or warranty not so qualified) as of the Closing Date as if made at and as of such date except as otherwise contemplated by this Agreement.

## ARTICLE 7.  TERMINATION, AMENDMENT AND WAIVER

SECTION 7.01        *Termination.*   This Agreement may be terminated:

(a)        by mutual written agreement of Seller and Purchaser prior to the Closing Date;

(b)        at any time before the Closing, by Purchaser if any of the material conditions set forth in Section 6.01 or Section 6.03 shall have become incapable of fulfillment or cure and shall not have been waived by Purchaser, provided that Purchaser is not then in breach of this Agreement; and

(c)        at any time before the Closing, by Seller if any of the material conditions set forth in Section 6.01 or Section 6.02 shall have become incapable of fulfillment or cure and shall not have been waived by Seller, provided that Seller is not then in breach of this Agreement.

SECTION 7.02        *Effect of Termination.*   If this Agreement is terminated under Section 7.01, written notice thereof will forthwith be given to the other party and this Agreement will thereafter become void and have no further force and effect, except for those provisions that expressly survive the termination of this Agreement, all further obligations of Seller and Purchaser to each other under this Agreement will terminate without further obligation or liability of Seller or Purchaser to the other, except that each party will return the earnest money paid, all documents, work papers and other material of the other party relating to the transactions

contemplated by this Agreement, whether so obtained before or after the execution of this Agreement, to the party furnishing the same.

## ARTICLE 8. GENERAL PROVISIONS

SECTION 8.01 *Survival of Representations, Warranties and Covenants*. The representations and warranties in this Agreement shall survive until the Closing. Each of the covenants and obligations of Purchaser and Seller in this Agreement shall survive in accordance with their respective terms.

SECTION 8.02 *Notices*. All notices, claims, demands and other communications hereunder shall be in writing and shall be deemed given upon (a) confirmation of receipt of a facsimile transmission, (b) confirmed delivery by a standard overnight carrier or when delivered by hand, or (c) confirmed delivery by email, in each such case addressed to the respective parties at the following addresses (or such other address for a party as shall be specified by like notice):

    (a)    If to Purchaser, to

YOURCODE, Inc.
Beau Fessenden   Email: beau@naturalmolecular.com
Keith Tyacke     Email: keith@naturalmolecular.com
Ken Webert      Email:Webert.Ken@gmail.com

Such addresses to be reasonably supplemented prior to closing

with a copy (which shall constitute notice) to:

Karr Tuttle Campbell
701 Fifth Avenue, Suite 3300
Seattle, WA 98104
Attention: Diana K. Carey, Esq.`
Fax: 206-682-7100
Email: DCarey@karrtuttle.com

    (b)    If to Seller, to:

Mark Calvert
Trustee for Natural Molecular Testing Corporation
1420 Fifth Avenue, Suite 2211
Seattle, WA 98101
Fax: (425) 642-8200
Email: mark@cascadecapitalgroup.com

with the copy (which shall not constitute notice) to:

> Perkins Coie LLP
> 1201 Third Avenue, Suite 4900
> Seattle, WA 98101-3099
> Attention: John S. Kaplan
> Fax: (206) 359-9408
> Email: JKaplan@perkinscoie.com

SECTION 8.03 *Descriptive Headings; Certain Terms*. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. All references to "$" or dollars shall be to United States dollars.

SECTION 8.04 *Entire Agreement, Assignment*. This Agreement (including the Exhibits, Schedules and the other documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, between the parties or either of them. Seller and Purchaser acknowledge that in deciding to enter into this Agreement and to consummate the transactions contemplated hereby, they have not relied upon any statements, promises or representations, written or oral, express or implied, other than those explicitly set forth in this Agreement. In furtherance and not in limitation of the foregoing, Purchaser acknowledges that Seller has not made any representations or warranties, of any kind, either express or implied, except as expressly set forth in this Agreement. PURCHASER ACKNOWLEDGES AND AGREES THAT ALL ACQUIRED ASSETS ARE SOLD **"ÁS IS, WHERE IS"**, AND THAT THE REPRESENTATIONS AND WARRANTIES GIVEN HEREIN BY SELLER ARE IN LIEU OF, AND PURCHASER HEREBY EXPRESSLY WAIVES ALL RIGHTS TO, ANY IMPLIED WARRANTIES WHICH MAY OTHERWISE BE APPLICABLE BECAUSE OF THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE OR ANY OTHER STATUTE, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. This Agreement shall not be assigned by operation of law or otherwise.

SECTION 8.05 *Governing Laws*. This Agreement shall be governed by and construed in accordance with the laws of the State of Washington without regard to the rules of conflict of laws of the State of Washington or any other jurisdiction. Purchaser and Seller irrevocably and unconditionally consent to submit to the jurisdiction of the Bankruptcy Court for all matters arising out of or relating to this Agreement and the transactions contemplated thereby (and agree not to commence any litigation relating thereto except in the Bankruptcy Court).

SECTION 8.06 *Expenses*. Except as set forth in this Agreement, whether or not the transactions contemplated by this Agreement are consummated, all costs and expenses incurred in connection with this Agreement and the transactions contemplated hereby shall be paid by the party incurring such expenses. The foregoing shall not affect the legal right, if any, that any party hereto may have to recover expenses from any other party that breaches its obligations hereunder.

SECTION 8.07     *Amendment*.  This Agreement and the Exhibits and Schedules hereto may not be amended except by an instrument in writing signed on behalf of the parties hereto.

SECTION 8.08     *Waiver*.  At any time prior to the Closing Date, the parties hereto may (a) extend the time for the performance of any of the obligations or other acts of the other parties hereto, (b) waive any inaccuracies in the representations and warranties contained herein or in any document delivered pursuant hereto, and (c) waive compliance with any of the agreements or conditions contained herein. Any agreement on the part of a party hereto to any such extension or waiver shall be valid only if set forth in an instrument in writing signed on behalf of such party.

SECTION 8.09     *Counterparts; Effectiveness*.   This Agreement may be executed by electronic or facsimile signature and in two or more counterparts, each of which shall be deemed to be an original but all of which shall constitute one and the same agreement. This Agreement shall become effective when each party hereto shall have received counterparts thereof signed by the other party hereto.

SECTION 8.10     *Severability; Validity; Parties of Interest*.   If any provision of this Agreement or the application thereof to any Person or circumstance is held invalid or unenforceable, the remainder of this Agreement, and the application of such provision to other Persons or circumstances, shall not be affected thereby, and to such end, the provisions of this Agreement are agreed to be severable. Nothing in this Agreement, express or implied, is intended to confer upon any Person not a party to this Agreement any rights or remedies of any nature whatsoever under or by reason of this Agreement.

SECTION 8.11     *Attorneys' Fees*.  In any litigation to enforce the terms of this Agreement, the prevailing party shall be entitled to its reasonable attorneys' fees and costs.


# ARTICLE 9.  DEFINITIONS

SECTION 9.01     *Defined Terms*.  As used in this Agreement (including its Exhibits and Schedules), the terms below shall have the following meanings:

"**Acquired Assets**" has the meaning set forth in Section 1.01(a) and includes, without limitation, the Assigned Assets and the Intellectual Property.

"**Acquired Intellectual Property**" has the meaning set forth in Section 1.01(c).

"**Agreement**" has the meaning set forth in the Preamble.

"**Assigned Assets**" has the meaning set forth in Section 1.01(a).

"**Bankruptcy Code**" has the meaning set forth in the Recitals.

"**Bankruptcy Court**" has the meaning set forth in the Recitals.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedures, as amended.

"**Bill of Sale**" has the meaning set forth in Section 2.02(a)(i).

"**Business Day**" means any day that is not a Saturday, a Sunday or other day on which banks are required or authorized by law to be closed in Seattle, Washington.

"**Chapter 11 Case**" has the meaning set forth in the Recitals.

"**Closing**" has the meaning set forth in Section 2.01.

"**Closing Date**" has the meaning set forth in Section 2.01.

"**Confidential Information**" has the meaning set forth in Section 5.02(a).

"**Conveyance Documents**" has the meaning set forth in Section 2.02(a)(ii).

"**Disclosure Schedules**" has the meaning set forth in Section 5.11.

"**Excluded Assets**" has the meaning set forth in Section 1.02.

"**Excluded Liabilities**" has the meaning set forth in Section 1.03.

"**Final Order**" means an order of the Bankruptcy Court, or other court of competent jurisdiction, for which the time to appeal has expired and no appeal was filed, or if an appeal was filed, it has not been stayed or has been dismissed or denied and the time for further appeal has expired or no right of further appeal exists.

"**GAAP**" means United States generally accepted accounting principles.

"**Governmental Entity**" means any governmental regulatory authority or agency (whether U.S., federal, state, local or foreign).

"**Including**" shall always be read as "including without limitation."

"**Intellectual Property**" means all trademarks, service marks, trade names, logos, domain names, computer software, mask work, invention, patent, trade secret, copyright, Internet, technology, processes, inventions, proprietary data, formulae, research and development data, computer software programs, know-how (including any registrations or applications for registration of any of the foregoing) or any other similar type of proprietary intellectual property right, in each case, that are used in or relate to the conduct of the Business.

"**Inventory**" means all of Seller's inventory held for resale and all of Seller's raw materials, work in process, finished products, wrapping, supply and packaging items and similar items with respect to the Business, in each case wherever the same may be located.

"**IP License Agreements**" has the meaning set forth in Section 3.04(a).

"**Knowledge**" or known means, with respect to Seller, the actual knowledge, after reasonable investigation of any executive officers.

"**Material Adverse Effect**" means any event, condition or matter that in the aggregate will result in or have a material adverse effect on the Acquired Assets, the Assumed and Assigned Contracts, the Assumed Liabilities, the value or prospects of the Business, or the ability of Purchaser to operate the Business after the Closing.

"**Permits**" means any permit, license or authorization issued, granted or given or otherwise made available by any Governmental Entity.

"**Person**" means an individual, corporation, partnership, limited liability company, association, trust or other entity or organization, including a government or political subdivision or an agency or instrumentality thereof.

"**Petition Date**" has the meaning set forth in the Recitals.

"**Plan**" has the meaning set forth in the Recitals.

"**Purchase Price**" has the meaning set forth in Section 1.04.

"**Purchaser**" has the meaning set forth in the Preamble.

"**Sale Order**" has the meaning set forth in Section 6.01(a).

"**Seller**" has the meaning set forth in the Preamble.

[Signatures on following page]

IN WITNESS WHEREOF, Seller and Purchaser have caused this Agreement to be executed on their behalf by their officers thereunto duly authorized, as of the date first above written.

SELLER:

NATURAL MOLECULAR TESTING CORPORATION

By: _____
Mark Calvert, solely in his capacity as court-appointed trustee for Natural Molecular Testing Corporation

PURCHASER:

YOURCODE, INC., a Washington corporation

By:_____
    Beau Fessenden, Its Principal

PURCHASER SHAREHOLDERS:

_____
Beau Fessenden

_____
Keith Tyacke

_____
Ken Webert

**EXHIBIT A**

**ACQUIRED ASSETS**

Substantially all of the assets of Seller used in the YOURCODE business, including specifically and without limitation all of Seller's rights and interests in and to:

1.　　All software and other intellectual property assets used in the YOURCODE business, and any personal property related thereto, including but not limited to: Customer lists for physicians and clinics; patents and trademarks; programs known as LabSynq, CGAT, MedRepo, GDIQ, to include all passwords and all patient data and DNA samples, subject to the condition precedent that Purchaser is able to verify that it can transfer and use that patient data.  Such transfers of property are subject to a fully-paid, royalty-free license back to the Trustee for the purposes of administering Seller's remaining assets and otherwise fulfilling the Trustee's and Seller's legal obligations in the Bankruptcy Case.

The patents and trademarks include the following: "Natural Molecular Testing Corporation" service mark (trademark) application serial number 85670931
"Natural Molecular" registered service mark (trademark no.) 4356802
"Pride Registry" service mark (trademark) application serial number 8552871
"Revolutionizing Patient Care through Personalized Medicine" registered service mark (trademark) number 4295515
Registered service mark (trademark) number 4295514, consisting of two opposing offset crescent patterns of dots of varying size.

2.　　2012 GMC Sierra Denali

3.　　Computer equipment to include: (i) 3 laptop computers, previously used by the Purchaser Shareholders, (ii) up to 8 desktop computers containing data related to the YOURCODE business, and (iii) a copy of information imaged from the servers in possession of the Trustee and/or his counsel, K&L Gates, at Purchaser's expense.

**EXHIBIT B**

**EXCLUDED ASSETS**

1.      All causes of action, whether under Sections 544–553 of the Bankruptcy Code, or arising under non-bankruptcy law

2.      All Cash, cash equivalents, letters of credit or instruments held by Seller.

3.      All accounts receivable of Seller.

4.      All deposits made by Seller with utilities or other third parties, except deposits under Assumed Contracts and only net of any new deposits required by the same utilities from Purchaser.

5.      All equipment and other physical assets of the Debtor except for the 2012 GMC Sierra Denali and the DNA samples and computer equipment identified on Exhibit A.

6.      All other assets not specifically identified on Exhibit A.

**EXHIBIT C**

**ASSUMED LIABILITIES**

None

115286-0001/ LEGAL124589718.6

**EXHIBIT D**

**BILL OF SALE**

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Mark Calvert, in his capacity as court-appointed bankruptcy trustee for Natural Molecular Testing Corporation ("Seller"), the debtor in the bankruptcy case now pending before the United States Bankruptcy Court for the Western District of Washington, under Case No. 13-_____, does hereby give, grant, bargain, sell, transfer, assign, convey and deliver to YOURCODE, Inc., a Washington corporation ("Buyer"), pursuant to that certain Asset Purchase and Sale Agreement (the "Agreement"), dated January _____, 2015, the Acquired Assets identified in Section 1.01 of the Agreement.

This sale and conveyance is made pursuant to that certain Order of the Bankruptcy Court, dated _____, 2015 approving the Agreement and authorizing the transactions thereunder. The sale and conveyance is made from Seller to Buyer "as is, where is," with all faults and without warranties, representations or covenants whatsoever, whether express, implied or statutory, as to condition, quality or fitness for a particular purpose or use.

Dated as of _____, 2015.

NATURAL MOLECULAR TESTING CORPORATION

By:_____
Mark Calvert, solely in his capacity as court-appointed trustee for Natural Molecular Testing Corporation

**SCHEDULE 1.04**

**WIRE TRANSFER INSTRUCTIONS**

[Seller to provide prior to the Closing Date]

115286-0001/ LEGAL124589718.6

**SCHEDULE 3.04(a)**

**ACQUIRED INTELLECTUAL PROPERTY**

**Programs known as LabSynq, CGAT, MedRepo, GDIQ.**

**SCHEDULE 3.04(b)**

**EXCEPTIONS TO ACQUIRED INTELLECTUAL PROPERTY**

      Seller makes no warranties as to (1) the assignability of prepaid software licenses or any other intellectual property used in Seller's business that may be restricted from assignment under applicable non-bankruptcy law, or (2) any unpaid fees associated with any license agreement. It is understood that Purchaser in equal or better position than Seller to assess these issues.

115286-0001/ LEGAL124589718.6

**SCHEDULE 3.04(c)**

**EXCEPTIONS TO IP LICENSE AGREEMENTS**

Seller makes no warranties as to (1) the assignability of prepaid software licenses or any other intellectual property used in Seller's business that may be restricted from assignment under applicable non-bankruptcy law, or (2) any unpaid fees associated with any license agreement. It is understood that Purchaser in equal or better position than Seller to assess these issues.

**SCHEDULE 3.04(d)**

**EXCEPTIONS TO FEES FOR ACQUIRED INTELLECTUAL PROPERTY**

Seller makes no warranties as to (1) the assignability of prepaid software licenses or any other intellectual property used in Seller's business that may be restricted from assignment under applicable non-bankruptcy law, or (2) any unpaid fees associated with any license agreement. It is understood that Purchaser in equal or better position than Seller to assess these issues.

**SCHEDULE 3.04(e)**

**EXCEPTIONS TO NO DEFENSES TO SALE OF
ACQUIRED INTELLECTUAL PROPERTY**

Seller makes no warranties as to (1) the assignability of prepaid software licenses or any other intellectual property used in Seller's business that may be restricted from assignment under applicable non-bankruptcy law, or (2) any unpaid fees associated with any license agreement. It is understood that Purchaser in equal or better position than Seller to assess these issues.